IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                    CASE NO. 14-01977 (MCF)

CAFÉ LA PLAGE MANAGEMENT, INC.            CHAPTER 11

    Debtor

**OPINION AND ORDER**

Pending before the Court is Lionstone IV Properties, LLC's ("Lionstone") motion for summary judgment (Docket No. 123) and Cafe La Plage Management, Inc.'s ("Debtor") opposition and cross motion for summary judgment (Docket No. 128) regarding the issue of payment of postpetition rent, pursuant to 11 U.S.C. § 365(d)(5). For the reasons stated below, Lionstone's motion for summary judgment is granted and Debtor's cross motion is denied.

**I.    UNCONTESTED FACTUAL BACKGROUND**

The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on March 14, 2014. Prior to its petition for relief, Debtor leased a real estate property from Lionstone to operate a hotel and restaurant business.[1] The parties signed a

---

[1] Docket No. 113, "Answer to Objection to Claim 7," Attachment No. 1, Lease Agreement, Lead Case No. 14-01977

lease agreement on April 1, 2009.[2] This agreement stated that the monthly lease payment to be paid to the Lionstone by the Debtor was to be calculated as a percentage of the monthly "gross revenue" of the operations of the business. The percentages to be paid were: 20% of hotel operations earnings up to $100,000 and 25% of any amount greater than $100,000.

The Debtor has not made any postpetition rent payments since the filing of the petition. As a result, Lionstone filed a motion requesting payment of these monies by the Debtor (Docket No. 77). The parties do not dispute that postpetition rent is owed, but have divergent interpretations of the lease agreement and the amounts due. At the hearing held on September 24, 2014, the parties agreed that the matter before the Court is a legal issue regarding the interpretation of the term "gross revenue," which is used in the lease agreement and is the basis for calculating the amount to be paid in rent by the Debtor. After the parties filed their respective motions for summary judgment, the Court conducted an oral argument on December 3, 2014.

---

[2] Debtor has filed a motion to assume the lease agreement.(Docket No. 30). Lionstone has objected to the assumption, alleging that the contractual relationship was terminated and there is nothing to assume or reject. (Docket No. 37). The Court held in abeyance the resolution of Debtor's motion to assume the lease until a final determination has been pronounced by the local court regarding the contractual relationship between the parties. (Docket No. 69).  Therefore, we are not making any judgment as to the validity of the lease or the relationship between the parties and the parties are deemed not to have waived any legal argument pertinent to those issues.  Our opinion is limited to the issue of payment of postpetition rents and the amounts due.

-2-

## II. JURISDICTION

This Court has jurisdiction of the subject matter pursuant to 28 U.S.C. §§ 1334, 157(a) and the "Standing Order of Resolution for Bankruptcy Cases" dated July 19, 1984 (Torruella, C.J.), which refers title 11 proceeding to Bankruptcy Court. This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## III. POSITIONS OF THE PARTIES

The issue before the Court is the determination of the amount owed by the Debtor in postpetition rent. This entails deciding what definition of "gross revenue" should be used in this calculation.

The Debtor argues that the amount owed in postpetition rent should be calculated based on "gross revenue" as defined by the Internal Revenue Service ("IRS") standards that allegedly deduct operating expenses from the final amount which is to be considered "gross revenue."

Lionstone argues that the amount owed in postpetition rent should be based on "gross revenue" as defined by the lease agreement between the parties that does not deduct operating expenses from the revenue generated by the Debtor.

## IV. DISCUSSION

A. <u>STANDARD FOR SUMMARY JUDGMENT</u>

Rule 7056 of the Federal Rules of Bankruptcy Procedure makes Fed. R. Civ. P. 56(a) applicable in adversary proceedings. Rule 56(a) governs summary judgments and states that:

> [a] party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no general dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).

Under Rule 56(c) summary judgment is proper:

> if the pleadings, depositions, answer to interrogations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law… The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

In regard to material facts, the substantive law will identify which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing

law properly preclude the entry of the summary judgment determination. Factual disputes that are irrelevant or unnecessary will not be counted." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986).

B. <u>APLICABLE CONTRACT LAW</u>

In the instant case, Lionstone and the Debtor entered in a lease agreement for the use of commercial property. This fact is uncontested and the lease agreement is included in the record.[3] In its "Reply to Motion for Summary Judgment," the Debtor states that "Lionstone is entitled to post-petition rent in consonance with [the] terms of [the] Lease, applicable law and 11 U.S.C. § 365(d)(3)."[4] Neither party has contested the fact that postpetition rents are due to Lionstone. The issue at hand lies not in the existence of a debt owed to Lionstone for postpetition rent, but rather the amount owed and the contractual interpretation that should be used in its calculation.

To resolve this contractual dispute, we turn to state law which governs property interests. Unless a different result is required by a federal interest, there is no reason to analyze such interests differently simply because an interested party is

---

[3] Docket No. 113, "Answer to Objection to Claim 7," Attachment No. 1, Lease Agreement, Lead Case No. 14-01977.
[4] Docket No. 128, "Motion for Summary Judgment re: Post-Petition Rent" at 9.

involved in a bankruptcy proceeding. "Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping and to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy'. Lewis v. Manufacturers Nat'l Bank, 364 U.S. 603, 609." Butler v. United States, 440 U.S. 48, 55 (1979).

In Puerto Rico, contracts are legally binding from the moment that consent, subject matter and the cause of the obligation concur; and from that moment, obligations are created that are legally binding between the contracting parties. Arts. 1213 & 1214 of the Civil Code, P.R. Laws Ann. Tit. 31, §§ 3391, 2994 (1990). "Contracts are perfected by mere consent, and from that time they are binding, not only with regard to the fulfillment of what has been expressly stipulated, but also with regard to all the consequences which, according to their character, are in accordance with good faith, use, and law." Art. 1210 of the Civil Code, P.R. Laws Ann. Tit. 31, § 3375 (1990).

"The principle of 'pacta sunt servanda' establishes the obligatory force of a contract according to its terms and necessary consequences that are born from the good faith." Banco Popular de Puerto Rico v. Sucecion Talavera, 174 D.P.R. 686, 693 (2008)(our translation); Art. 1044 of the Civil Code, P.R. Laws

-6-

Ann. Tit. 31, § 2994 (1990). The contracting parties may make the agreement and establish the clauses and conditions which they may deem advisable, provided they are not in contravention of law, morals, or public order. Art. 1207 of the Civil Code, P.R. Laws Ann. Tit. 31, § 3372 (1990). However, it has also been decided that certain contracts require interpretation to be able to assess the nature of the obligation in which the parties incurred. Sociedad Legal de Gananciales Irizarry v. Sociedad Legal de Gananciales Garcia, 155 D.P.R. 713 (2001).

The Puerto Rico Civil Code establishes guidelines to be used in the interpretation of a contract: "If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed. If the words should appear contrary to the evident intention of the contracting parties, the intention shall prevail." P.R. Laws Ann. Tit. 31, § 3471 (1990); Mega Media Holdings, Inc. v. Aerco Broad. Corp., 852 F. Supp. 2d 189 (D.P.R. 2012). When the terms of the contract are clear and leave no doubt about the intention of the parties, it is unnecessary to apply the rules of interpretation. Art. 1233 of the Civil Code, P.R. Laws Ann. Titl. 31, § 3471 (1990). Regarding the clear terms of the contract:

> Article 1233 specifies exactly when extrinsic evidence should be considered. As explained before, only if the literal terms of the contract are in doubt will it be

> necessary in the first place to examine or interpret the contract with the help of extrinsic evidence. To argue that the intention of the parties takes precedence over a written contract does not change the analysis under Article 1233. The reason that clear and unambiguous terms will not be altered is not that the written word has taken precedence over the intention of the parties when they entered into the contract; rather, under Article 1233, the clear terms of a contract are given preference over subsequent allegations because these terms are supposed to represent in the first place the real intent of the parties at the time they entered into the contract.

Hopgood v. Merrill Lynch, Pierce, Fenner & Smith, 839 F. Supp. 98 (D.P.R. 1993).

It has been decided that "clear terms" are those that by themselves are lucid enough to be understood in only one sense, without giving way to doubt, controversies, nor diversity of interpretation and to understand them, they do not need reasoning or demonstrations susceptible to contesting. Sucecion Ramirez v. Tribunal Superior, 81 D.P.R. 357 (1959). On the other hand, a contract clause is ambiguous when it is susceptible to be understood or interpreted in different ways or manners.

In regards to generalized terms in a contract, Article 1225 of the Civil Code states that "[h]owever general the terms of the contract may be, there should not be understood as included therein things and cases different from those with regard to which the persons interested intended to contract." P.R. Laws Ann. Tit. 31, § 3473 (1990). In addition, Article 1236

of the Civil Code states that "[i]f any stipulation of a contract should admit of different meanings, it should be understood in the sense most suitable to give it effect." P.R. Laws Ann. Tit. 31, § 3474 (1990). When considering the interpretation of contracts, it has been established that:

> [a]lthough the courts must consider the intention of the parties when interpreting a contract, while doing this, we must assume loyalty, correctness and good faith in its drafting, and interpret it in a way that can lead to the results that conform to the contractual relationship and that follow ethical guidelines. In other words, the courts cannot find darkness or distort the interpretation of contracts in order to arrive at absurd or unjust conclusions.

Irizarry, 155 D.P.R. 713 (our translation).

The courts cannot arrive at results that differ from that text of the contract, which is what gathers the will of the parties. The courts have the faculty of looking after the compliance of contracts and should not relieve a party of its contractual obligation when the contract is legal, valid and without error. De Jesus Gonzalez v. Autoridad de Carreteras, 148 D.P.R. 255 (1999).

In our case, the contract signed by the parties, establishes that the rent due is based on a percentage of amounts received by the Debtor through business operations. In its relevant clause, the lease agreement states that:

3.1.1 Participating Rent.

> (a) Amount. For each Accounting Period, Tenant shall pay "Participating Rent" in arrears on or before the twentieth (20th) day of each succeeding month with respect to the prior month in an amount equal to twenty percent (20%) of the Gross Revenue for said month up to $100,000 of Gross Revenue and twenty five percent (25%) of any amount over $100,000 of Gross Revenue for said month.[5]

The parties agreed to the previously stated terms and the Debtor retained possession of the property, performing operations that generated revenues that are to be analyzed for the purpose of determining the applicable rent amount. The parties do not dispute the percentages that apply to the rent calculation. We must only address the interpretation of "gross revenue" included in the previously mentioned clause and use this definition to compute the rent in question.

In the definitions section of the lease agreement, a specific definition of "gross revenue" is included whereby such term is defined as follows:

> 'Gross Revenues' shall mean all revenues, receipts, and income of any kind derived directly or indirectly by Tenant or any sub-tenant from or in connection with the Leased Property or operation of the Hotel including, but not limited to room rentals and food and beverage sales sold and delivered on or off the Hotel whether for cash or credit, paid or collected, determined in accordance with GAAP and Uniform System of Accounts, excluding, however, (a) funds furnished by Landlord, (b) federal, state and municipal excise,

---

[5] Docket No. 113, "Answer to Objection to Claim 7," Attachment No. 1, Lease Agreement, Lead Case No. 14-01977, at 9.

-10-

> sales and use taxes and room taxes collected directly from patron and guests or as part of the sales price of any goods, services or displays, such as gross receipts, admissions, cabaret or similar or equivalent taxes and paid over to federal, state or municipal governments, (c) gratuities paid directly to an employee, (d) proceeds of insurance and Awards, (e) proceeds from sale of furnishings, fixtures and equipment which are permitted pursuant to the terms of this Agreement, (f) all loan proceeds from financing or [refinancing] of the Hotel or interests therein or components thereof, (g) interest earned on funds deposited into the Reserve Fund and (h) judgments and awards, except any portion thereof arising from normal business operations of the Hotel.[6]

As stated in its Reply, the Debtor contends that the definition of "gross revenue" that should be applied is the one present in Section 62 of the IRS Code. Debtor alleges that:

> [P]ursuant to IRS standards, "gross income" of an incorporated business is defined as taxable income, consists of total revenues less costs of goods sold, selling and administrative expenses, interest, and extraordinary item.

26 U.S.C. § 62.[7]

However, the Debtor provides no basis upon which the Court should apply the definition of "gross income" as it appears in the IRS Code instead of the definition of "gross revenue" that was agreed upon in the lease agreement. The definition of "gross revenue" agreed to by the parties is clear and unambiguous.

---

[6] Docket No. 113, "Answer to Objection to Claim 7," Attachment No. 1, Lease Agreement, Lead Case No. 14-01977, at 4.
[7] Docket No. 128, "Motion for Summary Judgment re: post-petition rent," at 11.

Debtor failed to present a legal basis to justify the application of a definition that is different to the one present in the agreement. The definition, as constructed in the agreement, does not contradict any local or federal statute. Thus it is the law between the parties even though Debtor may not favor the provision at this point in time. Therefore, the definition of "gross revenue" to be used in the calculation of rent, is the one included in the lease contract, which is based on all income generated by the Debtor's business. [8] No more, no less.

The Court used the Monthly Operating Reports submitted by the Debtor to calculate the amount of postpetition rent owed to Lionstone.[9] The total amount of postpetition rents owed from the gross revenues received from March 2014 to October 2014 is $152,106.51. To reach this number, all monthly revenue generated by the Debtor up to $100,000 was multiplied by 20% and any amounts over $100,000 were multiplied by 25%. The table below illustrates the monthly payments and the total payment due to Lionstone by Debtor.

---

[8] The definition of "gross revenue" included in the contract does not provide for any operating expense deductions from total business revenue.

[9] The payment chart included herein is based on the numbers reflected in Debtor's monthly operating reports. The Court is not passing judgment over the correctness of the amounts included in the monthly operating reports. If any objection is raised as to the correctness of these reports, the Court will address this matter accordingly.

-12-

| Month | Gross Revenue | Rent Due |
|---|---|---|
| March, 2014 | $24.15[10] | $4.83<br><br>For April, 2014 |
| April, 2014 | $1,771.04[11] | $354.20<br><br>For May, 2014 |
| May, 2014 | $136,460.06[12] | $29,115.02<br><br>For June, 2014 |
| June, 2014 | $123,300.66[13] | $25,825.17<br><br>For July, 2014 |
| July, 2014 | $151,088.66[14] | $32,772.17<br><br>For August, 2014 |
| August, 2014 | $151,088.66[15] | $32,772.17<br><br>For September, 2014 |
| September, 2014 | $63,704.45[16] | $12,740.89<br><br>For October, 2014 |
| October, 2014 | $92,610.32[17] | $18,522.06<br><br>For November, 2014 |
| **Total** | $720,048.00 | **$152,106.51** |

---

[10] Docket No. 45, "Operating Report for the period of March, 2014."
[11] Docket No. 57, "Operating Report for the period of April, 2014."
[12] Docket No. 94, "Operating Report for the period of May, 2014."
[13] Docket No. 110, "Operating Report for the period of June, 2014."
[14] Docket No. 112, "Operating Report for the period of July, 2014."
[15] Docket No. 144, "Operating Report for the period of August, 2014."
[16] Docket No. 141, "Operating Report for the period of September, 2014."
[17] Docket No. 149, "Operating Report for the period of October, 2014."

In conclusion, Debtor is ordered to provide within thirty (30) days the payment of $152,106.51 and to pay monthly rent as it becomes due and payable in accordance with this ruling.

SO ORDERED.

In San Juan, Puerto Rico, this 11th day of December, 2014.

_____
MILDRED CABAN FLORES
U.S. Bankruptcy Judge

-14-